IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH DAKOTA
(SOUTHERN DIVISION)

| | |
|---|---|
| UNITED STATES OF AMERICA, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 10-4086<br>) |
| RICHARD D. KOR, WESLEY D. KOR, and KOR ETHANOL, INC. | )<br>)<br>) |
| Defendants. | )<br>)<br>) |

FILED
JUL 07 2010

## COMPLAINT

The United States of America, through its undersigned attorneys, by the authority of the Attorney General, and at the request of the Administrator of the United States Environmental Protection Agency, alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action commenced in part under section 309(b) and (d) of the Clean Water Act ("CWA"), 33 U.S.C. § 1319(b) and (d), to obtain injunctive relief and civil penalties against Richard D. Kor, Wesley D. Kor, and Kor Ethanol, Inc. ("Defendants"), for the discharge of pollutants into waters of the United States in White, Brookings County, South Dakota, without authorization by the United States Department of the Army, in violation of CWA section 301(a), 33 U.S.C. § 1311(a), and for the failure to comply in a full and timely manner with an Administrative Order for Compliance issued to Defendants by the United States Environmental Protection Agency ("EPA") under CWA section 309(a)(3), 33 U.S.C. § 1319(a)(3). This action is also commenced under section 311(b)(7)(C) and (E) of the CWA, 33 U.S.C. § 1321(b)(7)(C)

and (E), as amended by the Oil Pollution Act ("OPA"), for civil penalties against Richard D. Kor, Wesley D. Kor, and Kor Ethanol, Inc., for violations of the Spill Prevention, Control and Countermeasures ("SPCC") regulations promulgated pursuant to CWA section 311(j)(1), 33 U.S.C. § 1321(j)(1).

2. In this action, the United States seeks (1) to enjoin the discharge of pollutants into waters of the United States without a permit in violation of CWA section 301(a), 33 U.S.C. § 1311(a); (2) to require Defendants, at their own expense and at the direction of EPA, to restore and/or mitigate the damages caused by their unlawful activities; (3) to require Defendants to pay civil penalties as provided in 33 U.S.C. § 1319(d) for their CWA section 301 violations and for their failure to comply with the requirements of EPA's Administrative Order for Compliance, and (4) to require Defendants to pay civil penalties under 33 U.S.C. § 1321(b)(7)(C) for their failure to comply in a full and timely manner with EPA's SPCC regulations promulgated pursuant to 33 U.S.C. § 1321(j).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of this action pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), CWA section 311(b)(7)(E), 33 U.S.C. § 1321(b)(7)(E), and 28 U.S.C. §§ 1331, 1345, and 1355.

4. Venue is proper in the District of South Dakota pursuant to CWA section 309(b), 33 U.S.C. § 1319(b), CWA section 311(b)(7)(E), 33 U.S.C. § 1321(b)(7)(E), and 28 U.S.C. § 1391(b) and (c), because the Defendants conduct business in this District, the subject property is located in this District, and the causes of action alleged herein arose in this District.

5. Notice of the commencement of this action has been provided to the State of

South Dakota pursuant to CWA section 309(b), 33 U.S.C. § 1319(b).

## THE PARTIES

6. The Plaintiff in this action is the United States of America. Authority to bring this action is vested in the United States Department of Justice pursuant to 28 U.S.C. §§ 516 and 519, and 33 U.S.C. § 1366.

7. Defendant Richard D. Kor is a private individual residing at 20083 475th Avenue, White, South Dakota, 57276.

8. Defendant Wesley D. Kor is a private individual residing at 19935 475th Avenue, White, South Dakota, 57276.

9. Defendant Kor Ethanol is an inactive corporation formerly organized under the laws of South Dakota with a business address of 20084 474th Avenue, White, South Dakota, 57276.

10. At all times relevant to the Complaint, one or more of the Defendants either owned, leased or otherwise controlled the real property and facilities that are the subject of this Complaint and/or otherwise controlled the activities that occurred on such property or at such facilities.

## STATUTORY BACKGROUND

## UNPERMITTED DISCHARGES AND ADMINISTRATIVE COMPLIANCE ORDER

11. CWA section 301(a), 33 U.S.C. § 1311(a), prohibits the discharge of pollutants into navigable waters except in compliance with, <u>inter alia</u>, a permit issued pursuant to CWA section 404, 33 U.S.C. § 1344.

12. CWA section 404(a), 33 U.S.C. § 1344(a), authorizes the Secretary of the Army,

acting through the Chief of Engineers, to issue permits for the discharge of dredged or fill material into navigable waters at specified disposal sites, after notice and opportunity for public comment.

13. CWA section 502(12), 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

14. CWA section 502(6), 33 U.S.C. § 1362(6), defines "pollutant" to include, <u>inter alia</u>, dredged spoil, rock, sand and cellar dirt.

15. CWA section 502(7), 33 U.S.C. § 1362(7), defines "navigable waters" as "the waters of the United States, including the territorial seas."

16. 33 C.F.R. § 328.3(a)(1), (2), (5) and (7), and 40 C.F.R. § 232.2, define "waters of the United States" to include: (i) all waters which are currently used, were used in the past, or may be susceptible to use in interstate or foreign commerce; (ii) all inter-state waters; (iii) tributaries to such waters; and (iv) wetlands adjacent to such waters or their tributaries.

17. 33 C.F.R. § 328.3(b) and 40 C.F.R. §§ 122.2 and 232.2 define "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

18. CWA section 502(14), 33 U.S.C. § 1362(14), defines "point source" to include "any discernible, confined and discrete conveyance . . . from which pollutants are or may be discharged."

19. CWA section 502(5), 33 U.S.C. § 1362(5), defines "person" to include "an individual [or] corporation."

20. CWA section 309(b), 33 U.S.C. § 1319(b), authorizes the commencement of a civil action for appropriate relief, including a permanent or temporary injunction, against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a).

21. CWA section 309(d), 33 U.S.C. § 1319(d), authorizes the commencement of an action for civil penalties against any person who violates CWA section 301(a), 33 U.S.C. § 1311(a). The penalty amounts provided for by the CWA have been adjusted upwards for inflation pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, and the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, and 40 C.F.R. § 19.4. Therefore, any person who violates CWA section 301(a) shall be subject to a civil penalty in an amount up to $25,000 per day of violation through March 15, 2004, $32,500 per day of violation from March 16, 2004, through January 12, 2009, and $37,500 per day of violation thereafter.

22. CWA section 309(a)(3), 33 U.S.C. § 1319(a)(3), provides the Administrator of EPA with the authority to issue an Administrative Order for Compliance whenever on the basis of any information he finds that any person is in violation of CWA section 301, 33 U.S.C. § 1311.

23. CWA section 309(d), 33 U.S.C. § 1319(d), provides for the imposition of civil penalties against any person who violates one of EPA's Administrative Orders for Compliance issued under CWA section 309(a), 33 U.S.C. § 1319(a). Any person who violates an EPA Administrative Order for Compliance issued under CWA section 309(a) shall be subject to a civil penalty in an amount up to $25,000 per day of violation through March 15, 2004, $32,500 per day of violation from March 16, 2004, through January 12, 2009, and $37,500 per day of

violation thereafter.

## OIL SPILL PREVENTION

24.     In CWA section 311(b)(1), 33 U.S.C. § 1321(b)(1), Congress declared as the policy of the United States that there should be no discharges of oil or hazardous substances into the navigable waters of the United States or adjoining shorelines.

25.     In CWA section 311(j)(1), 33 U.S.C. § 1311(j)(1), the President is required to issue regulations, which, among other things, establish procedures, methods, equipment and other requirements for equipment to prevent discharges of oil and hazardous substances from onshore facilities. The President has delegated this authority to EPA and EPA has promulgated such regulations setting forth what are known as the Spill Prevention, Control and Countermeasure requirements, which are codified at 40 C.F.R. pt. 112 ("SPCC Regulations").

26.     The SPCC Regulations apply to "any owner or operator of a non-transportation-related onshore . . . facility engaged in . . . drilling, producing, gathering, storing, processing, refining, transferring, distributing, using, or consuming oil and oil products, which due to its location could reasonably be expected to discharge oil in quantities that may be harmful [as defined at 40 C.F.R. § 110.3] . . . into or upon the navigable waters of the United States or adjoining shorelines . . . ." 40 C.F.R. pt. 112.

27.     CWA section 311(a)(1) defines the term "oil" to include "oil of any kind or any form, including, but not limited to petroleum [and] fuel oil . . . ."

28.     40 C.F.R. § 112.2 further defines the term "oil" to include "oil of any kind or in any form, including, but not limited to: . . . vegetable oils, including oils from . . . kernels; and other oils and greases, including petroleum [and] fuel oil . . . ."

29. 40 C.F.R. § 112.2 defines the term "vegetable oil" to include "non-petroleum oil[s] or fat[s] of vegetable origin, including, but not limited to oils and fats derived from plant seeds . . . and kernels."

30. 40 C.F.R. § 112.2 defines the term "facility" to include "any mobile or fixed onshore . . . building, structure, installation, equipment, or pipe . . . used . . . in oil production, oil refining, oil storage, oil gathering, oil processing, oil transfer, [or] oil distribution . . . ."

31. Under 40 C.F.R. § 112.2, the term "navigable waters of the United States" means "'navigable waters' as defined in section 502(7) of the [Federal Water Pollution Control Act ('FWPCA')], and includes: (1) All navigable waters of the United States, as defined in judicial decisions prior to passage of the 1972 Amendments to the FWPCA (Pub. L. 92-5000), and tributaries of such waters; (2) Interstate waters; (3) Intrastate lakes, rivers, and streams which are utilized by interstate travelers for recreational or other purposes; and (4) Intrastate lakes, rivers, and streams from which fish or shellfish are taken and sold in interstate commerce."

32. 40 C.F.R. § 112.2 defines the term "wetlands" as "those areas that are inundated or saturated by surface or ground water at a frequency and duration sufficient to support, and that under normal circumstances do support, a prevalence of vegetation typically adapted for life in saturated soil conditions."

33. 40 C.F.R. § 112.2 defines the term "owner or operator" as "any person owning or operating an onshore facility . . . ."

34. 40 C.F.R. § 110.3 defines the term "discharges of oil in such quantities as 'may be harmful'" to "include discharges of oil that: (a) Violate applicable water quality standards; or (b) Cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or

cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines."

35. Under 40 C.F.R. pt. 112, owners and operators of onshore facilities subject to EPA's regulations must prepare and implement a Spill Prevention, Control and Countermeasures Plan ("SPCC Plan").

36. Under 40 C.F.R. pt. 112, owners and operators of onshore facilities must provide appropriate containment and/or diversionary structures or equipment to prevent a discharge of oil as provided under the regulations.

37. Under CWA section 311(b)(7)(C), 33 U.S.C. § 1321(b)(7)(C), any person who fails or refuses to comply with EPA's regulations at 40 C.F.R. pt. 112 shall be subject to a civil penalty in an amount up to $25,000 per day of violation through March 15, 2004, $32,500 per day of violation from March 16, 2004, through January 12, 2009, and $37,500 per day of violation thereafter.

38. CWA section 311(a)(7), 33 U.S.C. § 1321(a)(7), defines the term person to include "individual[s] . . . and corporation[s] . . . ."

## GENERAL ALLEGATIONS

## UNPERMITTED DISCHARGES AND ADMINISTRATIVE COMPLIANCE ORDER

39. From late 2000 through at least 2002, and possibly in 2003, at times better known by Defendants, one or more of the Defendants and/or persons acting on their behalf, discharged dredged or fill material into waters of the United States without a permit under CWA section 404 at the Kor's property located at White, Brookings County, South Dakota, Section 28, Township 112 North, Range 49 West (hereinafter referred to as the "Kor Site"). The waters of the United

States at the Kor Site consist of an unnamed tributary to North Deer Creek and wetlands adjacent to the unnamed tributary.

40.     The unnamed tributary to North Deer Creek and North Deer Creek are tributaries that flow at least seasonally, and flow into the Big Sioux River, an interstate, traditionally navigable water. The unnamed tributary and North Deer Creek are relatively permanent. Wetlands on the Kor Site have a continuous surface connection with the unnamed tributary.

41.     In addition, the wetlands on the Kor Site, either alone or in combination with similarly situated waters in the region, have a significant nexus to and/or significantly affect the chemical, physical or biological integrity of downstream navigable waters, including the Big Sioux River.

42.     The unnamed tributary, North Deer Creek and the Big Sioux River constitute waters of the United States and navigable waters under CWA section 502(7), 33 U.S.C. § 1362(7).

43.     The dredged or fill material that one or more of the Defendants and/or persons acting on their behalf, caused to be discharged includes, among other things, dirt, spoil, rock and sand, all of which constitute "pollutants" as defined in CWA section 502(6), 33 U.S.C. § 1362(6).

44.     One or more of the Defendants and/or persons acting on their behalf used mechanized land-clearing and earth-moving equipment to accomplish the discharges at the Kor Site. This equipment constitutes "point sources" as defined in CWA section 502(14), 33 U.S.C. § 1362(14).

45.     Defendants did not obtain a permit from the Secretary of the Army, acting through

the Chief of Engineers, for the discharges of dredged or fill material into waters of the United States as required by CWA sections 301(a) and 404, 33 U.S.C. §§ 1311(a), 1344.

46. One or more of the Defendants either owned, leased or otherwise controlled the land on which each unauthorized discharge of dredged or fill material into waters of the United States occurred.

47. One or more of the Defendants conducted, contracted for, supervised and/or otherwise controlled the unauthorized activities at issue in Paragraph 39.

48. Defendants are persons within the meaning of CWA section 502(5), 33 U.S.C. § 1362(5).

49. Defendants have violated and continue to violate CWA section 301(a), 33 U.S.C. § 1311(a), by their unauthorized discharges of dredged or fill material into waters of the United States, including both the unnamed tributary to North Deer Creek and the wetlands adjacent to the unnamed tributary of North Deer Creek at the Kor Site.

50. Each day that such material remains in place constitutes a separate violation of CWA section 301(a), 33 U.S.C. § 1311(a).

51. Unless enjoined, Defendants are likely to continue to discharge dredged or fill material into and/or to allow dredged or fill material to remain in the Kor Site in violation of CWA section 301, 33 U.S.C. § 1311.

52. On March 17, 2004, EPA issued an Administrative Order for Compliance to Defendants with respect to their unpermitted discharges described in Paragraph 39 above. Among other things, the Administrative Order for Compliance ordered Defendants to submit to EPA a Restoration Plan prepared by a qualified consultant for the removal of the fill and the

restoration of the waters of the United States that have been impacted. The Administrative Order for Compliance further ordered Defendants to implement the plan once EPA had approved the plan. While Defendants failed to meet the deadlines in the Administrative Order for Compliance for submitting the required plan, Defendants eventually submitted the required plan and EPA subsequently approved the plan on November 6, 2007, after requiring revisions to the plan. However, Defendants have failed to fully implement the approved plan in accordance with its deadlines. As of the date of filing this Complaint, Defendants have failed to fully implement the approved plan. As of the date of filing this Complaint, Defendants have failed to comply in a full and timely manner with the requirements of the Administrative Order for Compliance.

## OIL SPILL PREVENTION

53. At times best known to Defendants, one or more of the Defendants owned and/or operated an ethanol plant at the Kor Site prior to August 16, 2002. The plant ceased the active production of ethanol at some point in 2000, at a time better known to Defendants. One or more of the Defendants then constructed a new building immediately adjacent to the original building in order to expand the ethanol plant. The new building of the ethanol plant has not been brought into the active production of ethanol but it has been used to store oil.

54. On January 27 and 28, 2004, EPA inspected the Kor Site. At the time of EPA's inspection, the new ethanol plant building contained eight 15,000 gallon tanks, all of which contained corn mash syrup. The corn mash syrup constitutes oil within the meaning of section 311(a) of the CWA and 40 C.F.R. § 112.2, and vegetable oil within the meaning of 40 C.F.R. § 112.2. The original ethanol plant building contained four 4,000 gallon tanks which were empty at the time of EPA's inspection. However, prior to the time that the plant ceased the active

production of ethanol, those tanks held oil within the meaning of section 311(a) of the CWA and 40 C.F.R. § 112.2, and vegetable oil within the meaning of 40 C.F.R. § 112.2.

55. A 15,000 gallon tank trailer was present on the Kor Site to the east of the new ethanol plant building during EPA's January 27-28, 2004, inspection. This trailer was used to store and haul corn mash syrup from an outside source. The corn mash syrup that was stored in the tanker trailer at the Kor Site constitutes oil within the meaning of section 311(a) of the CWA and 40 C.F.R. § 112.2, and vegetable oil within the meaning of 40 C.F.R. § 112.2.

56. Three fuel tanks were located to the south of the original ethanol plant building at the Kor Site during EPA's January 27-28, 2004, inspection: a 1,000 gallon tank containing diesel fuel, a 500 gallon tank containing diesel fuel, and a 500 gallon tank containing gasoline. The diesel fuel and gasoline constitute oil within the meaning of section 311(a) of the CWA and 40 C.F.R. § 112.2.

57. Other tanks, such as an outdoor 15,000 gallon above ground storage tank, a 500 gallon aviation fuel tank and a 300 gallon used oil tank were present at the Kor Site during EPA's January 27-28, 2004, inspection.

58. The ethanol plant, the tank trailer discussed in Paragraph 55, the fuel tanks discussed in Paragraph 56, and the other tanks discussed in Paragraph 57 constituted a facility or facilities within the meaning of 40 C.F.R. § 112.2. One or more of the Defendants owned and/or operated the facility or facilities within the meaning of 40 C.F.R. § 112.2.

59. The ethanol plant, the tank trailer discussed in Paragraph 55, the fuel tanks discussed in Paragraph 56, and the other tanks discussed in Paragraph 57 constituted one or more non-transportation related onshore facilities previously engaged in producing, gathering, storing,

processing, refining, transferring, distributing, using, or consuming oil or oil products which due to their location could reasonably be expected to discharge oil in quantities that may be harmful into or upon the navigable waters of the United States or adjoining shorelines within the meaning of 40 C.F.R. § 112.1(a)(1) and sections 311 and 502 of the CWA. The navigable waters of the United States in question are unnamed tributary to North Deer Creek and the wetlands adjacent to the unnamed tributary to North Deer Creek at the Kor site.

60. At the time of EPA's inspection on January 27-28, 2004, neither the ethanol plant, the tank trailer discussed in Paragraph 55, the fuel tanks discussed in Paragraph 56, nor the other tanks discussed in Paragraph 57 had adequate containment and/or diversionary structures or equipment in violation of 40 C.F.R. pt. 112.

61. At the time of EPA's inspection on January 27-28, 2004, no SPCC Plan had been prepared and maintained as required by 40 C.F.R. pt. 112.

62. On March 19, 2004, EPA issued Defendant Richard Kor a Notice of Violation detailing the violations present at the Kor Site under EPA's Oil Pollution Prevention Regulations. On March 20, 2008, and May 1, 2008, Defendants submitted SPCC Plans to EPA, and EPA notified Defendants of deficiencies in the submitted Plans. On December 28, 2009, Defendants notified EPA that the volume of oil stored at the Kor site had been reduced to a level below the threshold for which an SPCC Plan is required.

## COUNT I

## UNPERMITTED DISCHARGES

63. Plaintiff repeats and realleges the allegations set forth in Paragraphs 11 through 23, and 39 through 52.

64. In 2000, 2001, 2002, and possibly 2003, one or more of the Defendants and/or persons acting on their behalf discharged dredged or fill material in and around the Kor Site without a CWA section 404, 33 U.S.C. § 1344, permit.

65. The Kor Site contains "waters of the United States" within the meaning of the CWA and the regulations promulgated thereunder, consisting of the unnamed tributary to North Deer Creek and wetlands adjacent to the unnamed tributary to North Deer Creek.

66. One or more of the Defendants' activities at the Kor Site resulted in the filling of approximately 2.68 acres of waters of the United States consisting of wetlands, in addition to an undetermined length of the tributary channel. One or more of the Defendants' activities at the Kor Site resulted in the channelization of approximately 2,674 linear feet of the tributary, that involved discharges of dredged or fill material.

## COUNT II

## ADMINISTRATIVE ORDER FOR COMPLIANCE

67. Plaintiff repeats and realleges the allegations set forth in Paragraphs 11 through 23, 39 through 52, and 64 through 66.

68. On March 17, 2004, EPA issued an Administrative Order for Compliance to Defendants with respect to their unpermitted discharges.

69. Defendants have failed to comply fully with the requirements of the Administrative Order for Compliance by the deadlines specified in the Order, and continue to fail to comply fully with the requirements of the Order.

## COUNT III

## OIL SPILL PREVENTION

70. Plaintiff repeats and realleges the allegations set forth in Paragraphs 24 through 38, 40-42, and 53 through 62.

71. One or more of the Defendants previously owned and/or operated the ethanol plant, the tank trailer discussed in Paragraph 55, the fuel tanks discussed in Paragraph 56, and the other tanks discussed in Paragraph 57 located or previously located at the Kor Site.

72. The ethanol plant, the tank trailer discussed in Paragraph 55, the fuel tanks discussed in Paragraph 56, and the other tanks discussed in Paragraph 57 constituted one or more non-transportation related onshore facilities previously engaged in producing, gathering, storing, processing, refining, transferring, distributing, using, or consuming oil or oil products which due to their location could reasonably be expected to discharge oil in quantities that may be harmful into or upon the navigable waters of the United States or adjoining shorelines within the meaning of 40 C.F.R. § 112.1(a)(1).

73. Defendants failed to comply fully with EPA's SPCC Regulations published at 40 C.F.R. pt. 112 because Defendants activities have been subject to the SPCC Regulations prior to August 17, 2002, and prior to December 28, 2009, Defendants failed to prepare, maintain, and implement an SPCC Plan for the facility or facilities at the Kor Site and failed to fully implement secondary containment for the facility or facilities at the Kor Site.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff, the United States of America, respectfully requests that this Court order the following relief:

That the Defendants be permanently enjoined from discharging or causing the discharge of dredged or fill material or other pollutants into any waters of the United States except in compliance with the CWA;

That the Defendants, or any combination thereof, be enjoined either to implement fully, at Defendants' own expense and at the direction of EPA, the restoration plan EPA has already approved under its Administrative Order for Compliance, or otherwise to undertake measures at Defendants' own expense and at the direction of the EPA to effect complete restoration of the unnamed tributary to North Deer Creek and its adjacent wetlands at the Kor Site and/or to conduct off-site mitigation for irreversible environmental damage, as appropriate;

That the Defendants be assessed pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), a civil penalty for each day of each violation of CWA section 301(a), 33 U.S.C. § 1311(a);

That Defendants be assessed pursuant to CWA section 309(d), 33 U.S.C. § 1319(d), a civil penalty for each day they have failed or refused to comply fully and timely with EPA's Administrative Order for Compliance issued under CWA section 309(a)(3), 33 U.S.C. § 1319(a)(3);

That Defendants be assessed pursuant to CWA section 311(b)(7)(C), 33 U.S.C. § 1321, a civil penalty for each day of each violation of EPA's Oil Spill Prevention regulations issued under CWA section 311(j), 33 U.S.C. § 1321(j);

That the United States be awarded costs and disbursements in this action; and

That this Court grant Plaintiff, the United States of America, such other relief as the Court may deem just and proper.

                    Respectfully submitted,

                    IGNACIA S. MORENO
                    Assistant Attorney General
                    Environment and Natural Resources
                      Division

                    DAVID A. CARSON
                    United States Department of Justice
                    Environment and Natural Resources Division
                    1961 Stout Street - 8th Floor
                    Denver, Colorado 80294
                    (303) 844-1349
                    (303) 844-1350 Fax
                    david.a.carson@usdoj.gov

OF COUNSEL:

Ginny Phillips, Attorney
United States Environmental Protection Agency
Office of Compliance and Enforcement Assurance
401 M Street, S.W.
Washington, D.C. 20460

Wendy Silver, Attorney
United States Environmental Protection Agency, Region 8
1595 Wynkoop Street,
Denver, CO 80202

Date: July 6, 2010